## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AHMED F. GAD,                    :      Civil No. 3:21-cv-1976
                                 :
              Plaintiff          :      (Judge Mariani)
                                 :
       v.                        :                    **FILED**
                                 :                    **SCRANTON**
CO PAVER, et al.,                :                    APR 1 7 2024
                                 :
              Defendants         :      Per_____
                                        DEPUTY CLERK

## MEMORANDUM

Plaintiff Ahmed Gad ("Gad"), an inmate who was housed, at all relevant times, at the

State Correctional Institution, Waymart, Pennsylvania ("SCI-Waymart"), initiated this civil

rights action pursuant to 42 U.S.C. § 1983.[1]  (Doc. 1).  Gad subsequently filed an

amendment to the complaint.  (Doc. 4).  Named as Defendants are Superintendent G.

Miller, Sergeant J. Castano, Corrections Officer R. Jones, former Sergeant T. Gaul,

Lieutenant J. Hendrick, Corrections Classification Program Manager T. McDermott,

Corrections Officer S. Bauer, Sergeant B. Morcom, Corrections Activities Manager T.

Walsh, Corrections Officer Nicholas Galea, Corrections Officer J. Gardner, Corrections

Officer K. Keller, and Corrections Officer D. Spry.  (Id.).  Presently before the Court is

Defendants' motion (Doc. 39) for summary judgment pursuant to Federal Rule of Civil

---

[1]    Gad is currently housed at the State Correctional Institution, Frackville, Pennsylvania.  (Doc. 30).

Procedure 56. For the reasons set forth below, the Court will grant Defendants' motion and enter judgment in their favor.

I.      **Factual Background & Procedural History**[2]

At all relevant times, Gad was housed at SCI-Waymart from January 30, 2019 to April 29, 2019, and from January 28, 2020 to March 23, 2021. (Doc. 40 ¶ 1). Gad was not housed at SCI-Waymart in November 2021. (*Id.* ¶ 2).

Gad's 2019 Claims

During 2019, Gad sets forth the following factual claims. On February 8, 2019, restricted housing unit ("RHU") correctional officers locked Gad in the shower, turned the cold water on for twenty minutes, laughed at him, called him a "gay faggot" and said "where he think he is at middle east[.]" (*Id.* ¶ 3).

---

[2]      Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (Doc. 40). Gad did not file a response to Defendants' statement of material facts, despite being ordered to do so. (*See* Doc. 44 ¶ 2) (advising Gad that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted) (citing M.D. PA. LOCAL RULE OF COURT 56.1). Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by Defendants. *See* M.D. PA. LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance").

Facts Related to Exhaustion of Administrative Remedies for February 2019 Claims

DC-ADM 804 is the Department of Corrections' policy for inmate grievances and appeals.  (*Id.* ¶ 4).  A grievance must be filed within fifteen working days of the event upon which the claim is based.  Fifteen working days from February 8, 2019, is on or about March 1, 2019.  (*Id.* ¶ 5).  Between February 8, 2019, and March 1, 2019, Gad only filed one inmate grievance—number 787008.  (*Id.* ¶ 6).  Grievance 787008 is not relevant to the February 2019 claims asserted within Paragraph 4(h) in Document 1 and Paragraph 2 in Document 4.  (*Id.* ¶ 7).  Grievance 787008 does not name any of the Defendants.  (*Id.* ¶ 8).

Gad's 2020 Claims

Gad sets forth the following claims for 2020:

Unidentified correctional officers banged on his cell door at 6:30 a.m. on February 28, 2020, and threatened to harass him.

Correctional Officer Price did not do anything after Gad reported to him that Inmate Rivera had assaulted him in the bathroom in April 2020.

After Gad reported Inmate Rivera's April 2020 attack, he claims unidentified correctional officers threatened him, placed him in the restricted housing unit for no reason, and told other inmates to abuse and harass him.

While Gad was in the restricted housing unit following his report of the Rivera April 2020 attack, unidentified officers abused and harassed Gad and told other inmates to abuse

and harass him, placed inmate Scott next to him to abuse and harass him, and unidentified officers banged on his cell door, called him names, and told sexual stories about Gad.

Correctional Officer Spry called Gad a "fagget," a "whore," and other unidentified names, and asked other unidentified inmates to harass him on December 17, 2020.

Correctional Officer Jones called Gad "fagget," whore," and "bitch," sexually harassed him, and asked other unidentified inmates to harass him on December 17, 2020 or December 18, 2020.

Correctional Officer Morcom did not give Gad the remainder of his lunch on December 28, 2020

Correctional Officer Keller opened Gad's cell door and threw his food on the cell floor on December 31, 2020, at approximately 6:15 a.m.

(*Id.* ¶ 9).

Facts Related to Exhaustion of Administrative Remedies for 2020 Claims

Fifteen working days from February 28, 2020, is on or before March 20, 2020. (*Id.* ¶ 10).  Between February 28, 2020, and March 20, 2020, Gad filed three inmate grievances— numbers 854361, 855835, and 855837.  (*Id.* ¶ 11).  Gad grieved issues related to intramural weights within grievance 854361.  (*Id.* ¶ 12).  Gad grieved issues related to a haircut within grievance 855835.  (*Id.* ¶ 13).  Gad grieved issues related to intramural weights within grievance 855837.  (*Id.* ¶ 14).

Fifteen working days from December 17, 2020, is on or about January 8, 2021.  (*Id.* ¶ 15).  Fifteen working days from December 18, 2020, is on or about January 12, 2021.  (*Id.* ¶ 16).  Fifteen working days from December 28, 2020, is on or about January 19, 2021, due to the New Year's Day holiday.  (*Id.* ¶ 17).  Fifteen working days from December 31, 2020, is on or about January 22, 2021.  (*Id.* ¶ 18).

Between December 17, 2020, and January 22, 2021, Gad filed one inmate grievance—number 909670.  (*Id.* ¶ 19).  In grievance 909670, Gad inquired about why he was housed in the restricted housing unit, and he complained about quarantine procedures and lack of privileges.  (*Id.* ¶ 20).  Gad does not seek monetary relief within grievance 909670.  (*Id.* ¶ 21).

<u>Gad's 2021 Claims</u>

Gad sets forth asserts the following claims for 2021:

On January 25, 2021, unidentified correctional officers turned off the hot water and turned on the cold water on him in the shower, told him "faggot, bitch, straighten up your cunt bitch you have a ra[z]or[,]" and took Gad to his cell with soap all over his body.

Correctional Officer Keller cursed at Gad when he gave him lunch on February 6, 2021.

Correctional Officer Morcom allegedly told Gad "you don't need [the cups]" that were removed from his cell by unidentified officers on February 10, 2021, at approximately 1:00 p.m.

On February 24, 2021, Correctional Officer Gaul took Gad naked from the shower to the other side of the unit causing him to freeze, called him a "dirt hole," "whore," and "fagget," and when Gad tried to walk faster Officer Gaul allegedly pulled the tether attached to his hand cuffs and caused him pain.

An unidentified correctional officer banged on his cell door to threaten and scare Gad on February 28, 2021, between 6:00 a.m. and 6:30 a.m.

Correctional Officer Bauer threw food on the cell floor towards Gad on March 2, 2021, and March 12, 2021.

On March 2, 2021, Gad asked an unidentified correctional officer who passed his cell to take his mail, but the officer acted like he could not hear him.

An unidentified officer caused Gad's toilet to flush "like a train" from the morning until the night to torture him.

On March 3, 2023, third-party inmates told Gad that unidentified officers called him a "faggot."

On March 4, 2021, Correctional Officer Morcom placed Gad in a "cage" that had a cold room temperature of less than thirty degrees to allegedly torture him from 9:00 a.m. until 11:00 a.m. due to a phone call from a lawyer.

On March 10, 2021, at approximately 5:33 p.m., Correctional Officer Galea did not give Gad toilet paper, soap, sick call, or request slips.

On Mach 10, 2021, Correctional Officer Galea opened the water in Gad's cell causing the sink water to splash on his bed and walls.

Correctional Officer Galea kept Gad in a cold cell of thirty degrees on March 10, 2021 to freeze and torture him.

On March 11, 2021, at approximately 1:05 p.m., an unidentified officer banged on Gad's cell door while he was praying, to threaten him.

On March 17, 2021, Correctional Officer Morcom took Gad to the shower on another unit and when Gad tried to walk faster, Morcom pulled on the tether attached to his handcuffs causing him pain.

On March 17, 2021, Correctional Officer Morcom gave Gad a messed-up razor to cut his skin.

On November 18, 2021, Correctional Officer Gardner wrote a fake inmate misconduct against Gad.

Gad was kept in the restricted housing unit for over one-hundred and seven days.

Lieutenant Hendrick allegedly told Gad, "I will treat you like my wife."

On December 31, 2021, Correctional Officer Keller opened Gad's cell door and threw his food on the cell floor.

Gad includes vague claims related to his dental care and tuberculosis.

(*Id.* ¶ 22).

<u>Facts Related to Exhaustion of Administrative Remedies for 2021 Claims</u>

From January 1, 2021, until Gad's transfer to SCI-Phoenix on March 23, 2021, Gad filed two inmate grievances—numbers 909670 and 914946.  (*Id.* ¶ 23).

In grievance 914946, Gad stated as follows:

Today 2/10/2021 when the [correctional officers] pulled me out of my cell around 12:30 p.m. to do my notarization they went inside my cell took all the cups from my cell so I cannot drink water or use my commissary while I am a DC status and I have the right to get commissary and my doctor or the mental health doctor told me to drink water because my medicines dry me out, or makes my body dry and that can make me dizy [sic] and can hurt me also because I am taking a lot of medicines and I told all that to CO Morcom and I told him that I need a cup please and that I am sick and I take a lot of medications and I need to drink water.  He said I don't care and he put me in my cell and lock…

(*Id.* ¶ 24).

Grievance 914946 was received by SCI-Waymart on February 16, 2021.  (*Id.* ¶ 25). Gad did not appeal the initial review response for grievance 914946 to either the Facility Manager or to final review.  (*Id.* ¶ 26).  Gad did not seek monetary relief within grievance 914946.  (*Id.* ¶ 27).

<u>Facts Related to Gad's Requests for Relief</u>

Gad is no longer housed at SCI Waymart.  (*Id.* ¶ 28).  Gad did not suffer more than *de minimis* physical injury for any claim asserted in the operative complaint.  (*Id.* ¶ 29).

<u>Defendants assert that Gad Lacks Competent Admissible Evidence</u>

Defendants assert that Gad lacks competent, admissible evidence to establish that any Defendant physically touched him in a sexual manner.  (*Id.* ¶ 30).

Defendants assert that Gad lacks competent, admissible evidence that he was at a substantial risk of harm from unidentified third-party inmates at SCI-Waymart after April 2020.  (*Id.* ¶ 31).

Defendants assert that Gad lacks competent, admissible evidence that any of the Defendants were subjectively aware of any substantial risk of harm from other third-party inmates after April 2020.  (*Id.* ¶ 32).

Defendants assert that Gad lacks competent admissible evidence that he was prevented from drinking water on February 10, 2021.  (*Id.* ¶ 33).  A drinking water fountain was accessible to Gad inside his cell on February 10, 2021.  (*Id.* ¶ 34).

## II.    <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

### A.   Official Capacity Claims

Defendants first move for summary judgment with respect to Gad's claims against them, arguing that they are immune from suit.  (Doc. 41, p. 12).  Under the Eleventh Amendment, Commonwealth agencies like the DOC are immune from suit.  (*Id.*).  This immunity extends to individual defendants acting in their official capacities.

In drafting his amendment to the complaint, Gad checked the boxes on the form to indicate that he seeks to name Defendants in their official capacities only.  (Doc. 4, pp. 11-12).  Because the Defendants are being sued solely in their official capacities, Defendants argue that they have immunity.  (Doc. 41, p. 12).  Gad does not respond to Defendants' argument.  (*See* Doc. 45).  However, it appears that Gad intended to sue Defendants in both their individual and official capacities.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal citations and quotations omitted).  The United States Supreme Court has described the difference between actions against officials in their official and personal capacities as follows.

11

In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits. We emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*, at 165, 105 S.Ct., at 3104 (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166, 105 S.Ct., at 3105. Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. *See* Fed. Rule Civ. Proc. 25(d)(1); Fed. Rule App. Proc. 43(c)(1); this Court's Rule 35.3. Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct., at 3105 (quoting *Monell, supra*, 436 U.S., at 694, 98 S.Ct., at 2037). For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. 473 U.S., at 167, 105 S.Ct., at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*, at 166, 105 S.Ct., at 3105. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.*, at 166-167, 105 S.Ct., at 3105-3106.

*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In order to determine whether a plaintiff is proceeding against a defendant in his personal or official capacity, courts consider "the complaints and the 'course of proceedings.'" *Garden State Elec. Inspection Srvs. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005) (citation omitted). Here, the Court finds that Gad is proceeding against

Defendants in both their official and personal capacities.  With respect to his official capacity claims, Gad expressly states that the Defendants are being sued in their official capacities. (Doc. 4, p. 14).  And, given the liberal construction afforded to *pro se* pleadings, Gad's complaint and amendment suggest that he also pleads claims against the Defendants in their personal capacities.  Gad's claims focus on the Defendants' alleged personal conduct. *See Kentucky*, 473 U.S. at 166-67 (personal capacity claims pursuant to § 1983 focus on whether an official, acting under color of state law, caused the deprivation of a federal right, whereas official capacity suits look to whether the entity, itself, was a "moving force" behind the violation).  Accordingly, the Court finds that Gad has sued Defendants in both their official and personal capacities.

B.     Exhaustion of Administrative Review[3]

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It has been made clear

---

[3]     In accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded them the opportunity to be heard under *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013).  (Doc. 43).

that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639

(3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the

exhaustion requirement of the PLRA applies to grievance procedures "regardless of the

relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir.

2000) (same).  "[I]t is beyond the power of [any] court . . . to excuse compliance with the

exhaustion requirement."  *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*,

28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

　　　　To exhaust administrative remedies an inmate must comply with all applicable

grievance procedures and rules.  *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004).  The

PLRA requires not only technical exhaustion of the administrative remedies, but also

substantial compliance with procedural requirements.  *Spruill*, 372 F.3d at 227-32; *see also*

*Nyhuis*, 204 F.3d at 77-78.  A procedural default by the prisoner, either through late or

improper filings, bars the prisoner from bringing a claim in federal court unless equitable

considerations warrant review of the claim.  *Spruill*, 372 F.3d at 227-32; *see also Camp v.*

*Brennan,* 219 F.3d 279 (3d Cir. 2000).  A procedural default may be excused, however, if

the prisoner can show that the administrative remedies were unavailable to him.  *See*

*Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires

only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are

'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).  "An administrative remedy

is unavailable when it "operates as a simple dead end[,] ... is so opaque that it becomes,

14

practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

The DOC employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); *Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys.*, Policy No. DC-ADM 804 ("DC-ADM 804"). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. *Id.* § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals, and again must be submitted within 15 working days of the date of the Facility Manager's decision. *Id.* § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the

prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." *Id.* § 1(A)(11).

Defendants argue that Gad failed to exhaust his administrative remedies for all claims before proceeding to federal court. (Doc. 41, pp. 13-15). Gad "concede[s] that [he] did not properly utilize the Prison grievance system." (Doc. 45, p. 8). However, he contends that Defendants Galea and Hendrick told him that "[his] complains will not go nowhere" [sic]. (*Id.* at pp. 8-9). He further contends that officers threw away his grievances. (*Id.*).

During the relevant time period Gad filed the following grievances.

On February 14, 2019, Gad filed grievance number 787008 regarding a misconduct hearing. (Doc. 40-4, p. 3). Grievance 787008 is not relevant to the February 2019 claims in the complaint and amendment and does not name any of the Defendants. (*Id.*). On February 15, 2019, the Facility Grievance Coordinator rejected the grievance under DC-ADM 804 and directed Gad to raise his challenges related to a misconduct via DC-ADM 801. (*Id.* at p. 2).

On March 5, 2020, Gad filed grievance number 854361 complaining about the weight room program. (Doc. 40-7). On March 13, 2020, Gad filed grievance number 855835 relating to a haircut. (Doc. 40-8). On March 15, 2020, Gad filed grievance number 855837 again complaining about the weight room program. (Doc. 40-9). These three

grievances—numbers 854361, 855835, and 855837—are not relevant to the claims in this action.

On January 12, 2021, Gad filed grievance number 909670, wherein he complained about his placement in the restricted housing unit, quarantine procedures, and lack of privileges.  (Doc. 40-12, p. 4).  Gad did not seek monetary relief within grievance number 909670.  (*Id.*).  Initial review of this grievance was conducted on January 15, 2021.  (*Id.* at p. 3).  The Grievance Officer denied Gad's grievance, finding that Gad was held in the RHU pursuant to DC-ADM 802, he was afforded a status hearing, had full administrative custody privileges, and his complaints did not establish that any DOC policies were violated.  (*Id.*). Gad appealed the first-level denial to the Facility Manager—Defendant Miller.  (*Id.* at p. 2). Defendant Miller upheld the Grievance Coordinator's denial, again finding that Gad did not provide any evidence to support his allegations that DOC policy was being violated.  (*Id.*). Gad did not appeal to SOIGA.

On February 10, 2021, Gad filed grievance number 914946, wherein he stated as follows:

> Today 2/10/2021 when the [correctional officers] pulled me out of my cell around 12:30 p.m. to do my notarization they went inside my cell took all the cups from my cell so I cannot drink water or use my commissary while I am a DC status and I have the right to get commissary and my doctor or the mental health doctor told me to drink water because my medicines dry me out, or makes my body dry and that can make me dizy [sic] and can hurt me also because I am taking a lot of medicines and I told all that to CO Morcom and I told him that I need a cup please and that I am sick and I take a lot of medications and I need to drink water.  He said I don't care and he put me in my cell and lock…

(Doc. 40-13, p. 2). Gad did not seek monetary relief within grievance number 914946. (*Id.*). Initial review of this grievance was conducted on February 19, 2021. (*Id.* at p. 3). The Grievance Officer denied Gad's grievance and reviewed video footage of the in-cell camera for the relevant date and time. (*Id.*). The Grievance Officer noted that all cells in the RHU are equipped with an operational water fountain, the officers were in Gad's cell to conduct a safety and security check pursuant to DC-ADM 203, and they left Gad one cup in his cell (as instructed by the RHU Lieutenant). (*Id.*). Gad did not appeal the initial review response for grievance number 914946 to either the Facility Manager or to final review.

Two conclusions can be drawn from this grievance history. First, Gad never identified Defendant Miller in any of his grievances as committing an act or omission that potentially violated his constitutional rights. Defendant Miller's only involvement in the grievance process was in his role as superintendent/Facility Manager for the second-level grievance review. Investigating and denying a grievance appeal that alleges inadequate care by medical staff is not equivalent to being deliberately indifferent to a prisoner's serious medical needs. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process"). Gad is not excused from administratively exhausting claims against Miller—as required by the PLRA—simply because he is the Facility Manager who denied relief under DC-ADM 804.

Second, Gad did not exhaust the claims raised in his complaint and amendment. The parties agree that Gad never appealed any of his grievances to final review. The record clearly demonstrates that Gad either failed to initiate the grievance process, or failed to fully complete the process, regarding the issues raised in his complaint and amendment. The Court, however, must address Gad's argument that Defendants thwarted his efforts to exhaust administrative remedies.

In asserting a dead-end grievance system, Gad alleges that Defendants Galea and Hendrick told him his complaints would not "go anywhere", and that unidentified correctional officers threw away his grievances. (Doc. 45, p. 9). Gad states that he mailed copies of the grievances he attempted to file to the Court. (*Id.*). However, the record before the Court does not contain any attempted-to-be-filed grievances. There is no evidence that prison administrators thwarted Gad from taking advantage of a grievance process through machination, misrepresentation, or intimidation. As is his burden, Gad has not demonstrated that he was actually thwarted from pursuing administrative remedies. *See Rinaldi*, 904 F.3d at 268 (an inmate must show both that the threat was objectively serious enough and that it "actually did deter him") (quoting *Turner v. Burnside*, 541 F.3d 1077, 1084-86 (11th Cir. 2008)); *Jackson v. Carter*, 813 F. App'x 820 (3d Cir. 2020) (*per curiam*) (affirming dismissal for lack of exhaustion despite numerous allegations of threats and retaliation from corrections officers because inmate failed to demonstrate that the officers' behavior "actually did deter" him from filing or pursuing a grievance); *Ortiz v. McBride*, 380

19

F.3d 649, 654 (2d Cir. 2004) (generalized allegations of threats were insufficient and the inmate did "not contend that the threats from guards prevented him from filing a grievance or otherwise rendered [the] grievance procedures unavailable"). Indeed, Gad only offered such occurrences as excuses for his failure to exhaust, and Galea and Hendrick's purported warning that his complaints would not go anywhere did not deter Gad from pursuing his legal claims, to-wit: continuing to file various grievances and filing this lawsuit.

Gad does not provide any evidence, via an affidavit, declaration, or other statement made under penalty of perjury to support a claim that the administrative remedy process was not available to him. Gad's bald assertions that prison staff prevented him from exhausting, standing alone, does not carry his burden of proving "that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Moreover, as stated *supra*, Gad initiated the grievance process on several occasions, but failed to properly appeal the matters to final review.

Thus, the undisputed evidence demonstrates Gad failed to properly exhaust his present claims. Gad offers no evidence to suggest that Defendants or anyone else at SCI-Waymart prevented him from exercising his right to file and appeal grievances within the prison system prior to filing a civil action. Mere assertions without any details to support such claims are insufficient to create a genuine issue of material fact. *See Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018). Gad has not satisfied his burden to

demonstrate that exhaustion was unavailable under the case law, and, accordingly, the Court will grant Defendants' motion for summary judgment.

## IV.   Conclusion

The Court will grant Defendants' motion (Doc. 39) and enter judgment in their favor. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: April _17_, 2024